# IN THE COURT OF APPEALS OF IOWA

———————————

No. 25-0997
Filed July 22, 2026

———————————

**State of Iowa,**
Plaintiff–Appellee,

v.

**Aisha Ahmad Nyala,**
Defendant–Appellant.

———————————

Appeal from the Iowa District Court for Black Hawk County,
The Honorable Joel Dalrymple, Judge.

———————————

**AFFIRMED**

———————————

Jack B. Bjornstad of Jack Bjornstad Law Office, Spirit Lake,
attorney for appellant.

Brenna Bird, Attorney General, and David Banta, Assistant Attorney
General, attorneys for appellee.

———————————

Considered without oral argument
by Tabor, C.J., Chicchelly, J., and Vogel, S.J.
Opinion by Chicchelly, J.

1

**CHICCHELLY, Judge.**

Aisha Nyala appeals her convictions after pleading guilty to multiple counts of stalking and first-degree harassment. On appeal, she argues the district court erred when it failed to, sua sponte, initiate competency proceedings when Nyala self-reported suicidal ideations in court filings. Upon our review, we find Nyala did not meet her burden to prove incompetence, so we affirm the district court.

## BACKGROUND FACTS AND PROCEEDINGS

After leaving her family in Sudan as a teenager, after having refused an arranged marriage with a much older man, Nyala graduated high school and enrolled in college. Between 2018 and 2022, Nyala was a biology student at the University of Northern Iowa (UNI). However, in 2022, a UNI official lodged a complaint against Nyala for harassment.

Because of the complaint, UNI convened a disciplinary hearing. Nyala was given notice of the hearing but requested it be rescheduled before ceasing communication with UNI officials. After the hearing, UNI suspended Nyala for one year but deferred the suspension and allowed Nyala to remain enrolled for a probationary period.

Nyala began to contact UNI officials regarding the discipline. After being told the discipline was final, Nyala's communications took a different turn. In January 2023, an administrative assistant answered a phone call from Nyala where the assistant was told that if something was not done regarding Nyala's discipline within two days, Nyala was "going to the University and will shoot that woman in her head." Nyala also accused UNI officials of racial discrimination and abuse.

Eventually, Nyala was asked to stop contacting UNI employees and instead communicate only with UNI's Vice President of Student Life and the Dean of Students. Nyala targeted both of these UNI officials on social media. Across several social media accounts, Nyala posted photographs of the UNI officials and their families with messages calling the officials "racist," "crooked," "unethical," and some posts even included commentary on the physical appearances of the officials.

Over the next several months, the social media posts escalated. Nyala took aim at the families of the UNI officials. On one occasion, Nyala posted "Hopefully someone sh00ts your kid. You deserve that kind of karma." Then, on another occasion, Nyala posted, ""Hopefully these kids get sh0t. I have your address." Nyala even took aim at another UNI official, who is married to the Dean of Students, by posting "I will get someone to deal with you [UNI official]. This does NOT end here you disgusting, filthy, beast. Mark my words, you and your disgusting wife have life long enemies." And Nyala's conduct was not confined to the dozens of social media posts. Nyala also submitted dozens of similar messages to UNI's online complaint platform for students to submit concerns.

Because of this, the State charged Nyala in two separate cases. The first trial information charged Nyala with twelve counts of stalking while using a technological device, a class "C" felony, in violation of Iowa Code section 708.11(3)(a)(4) (2023), and two counts of first-degree harassment, an aggravated misdemeanor, in violation of Iowa Code section 708.7(1). The second trial information charged Nyala with an additional eight counts of stalking while using a technological device and two additional counts of first-degree harassment.

While the case was pending, Nyala was represented by five separate attorneys. She made five attempts to substitute her fourth attorney through written filings. One of the filings included a statement that having the attorney represent her made her suicidal to the point where she does not "want to live anymore." At the hearing on this motion, Nyala informed the district court that the filing was made amidst a mental health crisis. But a few weeks later, Nyala filed another motion to substitute her attorney, which stated, "I continue to feel more suicidal having [defense attorney] as my attorney. The only thing I can think about is how I should kill myself. He needs to go once and for all." The district court granted the motion to substitute Nyala's counsel.

Ultimately, Nyala agreed to enter *Alford*[1] pleas to eleven counts of stalking while using a technological device and three counts of first-degree harassment. At the plea hearing, Nyala consulted her attorney for clarification on certain matters related to the plea and informed the district court that she was compliant with her medication and understood the nature of the proceedings. When given the opportunity to allocute, Nyala delivered a lengthy statement accused the UNI officials of racism and argued that they made her "become severely suicidal." Near the conclusion of her statement, Nyala stated,

> I have vowed to take my life as soon as I'm able to and after I pay my debt to society. My life has been destroyed and there is nothing left to live for. If I live, I will face systemic barriers in regards to education, employment, housing, loans, and more.

---

[1] *See North Carolina v. Alford*, 400 U.S. 25, 37 (1970) (permitting a criminal defendant to enter a guilty plea without admitting guilt).

After this, the district court engaged in a colloquy with Nyala regarding her suicidal ideations:

> District Court: So the Court has basically had you read to me your intent to commit suicide?  Is that what you've read to me?
>
> Nyala: At some point, yes.
>
> District Court: Okay.  We may be considering committal proceedings immediately following this and in all likelihood you may not be released from jail to supervision until these committal proceedings are finalized based upon that.

After this, the district court imposed ten-year indeterminate terms of incarceration for each stalking conviction and two-years indeterminate terms of incarceration for each harassment conviction.  Each count was ordered to run concurrent to one another and all sentences were suspended in favor of probation.  Nyala now appeals.

## DISCUSSION

Nyala's only argument on appeal is that the district court should have, sua sponte, ordered a competency evaluation.[2]  *See* Iowa Code § 812.3(1) (permitting the court to "schedule a hearing to determine probable cause" of incompetency).  "We review whether a trial court should have ordered a competency hearing de novo."  *State v. Einfeldt*, 914 N.W.2d 773, 778 (Iowa 2018).

---

[2] Even though Nyala pleaded guilty, she has established good cause to appeal as a matter of right.  *See* Iowa Code § 814.6(1)(a)(3) (limiting the ability to appeal as a matter of right from a guilty plea to appeals from a class "A" felony or when a defendant establishes "good cause" to appeal); *State v. Newman*, 970 N.W.2d 866, 870–71 (Iowa 2022) (recognizing a defendant has good cause to appeal from a guilty plea by raising a competency claim).

"Probable cause exists for a competency hearing when a reasonable person would believe that there is a substantial question of the defendant's competency." *Id.* at 779. To determine whether an evaluation should have been ordered, we consider: "(1) [the] defendant's irrational behavior, (2) demeanor at trial, and (3) any prior medical opinion on competence to stand trial." *State v. Lucas*, 323 N.W.2d 228, 232 (Iowa 1982). Because Nyala's counsel was "best situated to know whether [her] impairments compromise the defense of the case," we also consider the fact that her attorney failed to raise the issue. *See Einfeldt*, 914 N.W.2d at 780 (citation omitted); *accord Lucas*, 323 N.W.2d at 233 (finding the defendant's attorney and court were "in a better position to observe these factors than our examination of a cold record").

Because we presume a defendant is competent unless proven otherwise, Nyala has the burden of establishing incompetence. *See Newman*, 970 N.W.2d at 871. Upon our review, we do not find that she met this burden. Our focus is on Nyala's actions during the proceedings and especially before the court. *See id.* (considering the defendant's actions during plea colloquy and sentencing hearing).

At the plea hearing, Nyala told the district court she understood the nature of the proceedings and the terms of the plea agreement between the parties. Additionally, she was able to answer all the plea colloquy questions and confirmed she was compliant with any prescribed medications. And Nyala confirmed those medications did not inhibit her ability to understand the proceedings. Nyala also confirmed that she was pleading guilty voluntarily.

Upon our de novo review of the record, we find Nyala was coherent and fully responsive during the plea colloquy. *Compare Newman*, 970 N.W.2d

6

at 871 (finding competency hearing unwarranted when the defendant "demonstrated an understanding of the proceedings and the role of the persons present" and "an ability to communicate with his lawyer"), *and State v. Kramer*, 11 N.W.3d 794, 796, 798 (Iowa Ct. App. 2024) (finding competency hearing unwarranted when despite "loosely espous[ing]" nonsensical theories, the defendant "responded appropriately to the court's directions and gave coherent responses"), with *Einfeldt*, 914 N.W.2d at 780 (finding a competency evaluation should have been ordered after the defendant threatened to "stab her lawyer in the neck with a pen" and did not understand "why the lawyer was seated beside her").

Most importantly, Nyala was able to meaningfully participate in her own defense. *See Einfeldt*, 914 N.W.2d at 781 (interpreting section 812.3(1) to require the defendant "to effectively assist in the defense"). And Nyala was able to assist her attorney throughout the proceeding by consulting with him on at least four occasions. *See id.* Additionally, we note that Nyala's counsel informed the district court that he found Nyala to be "nothing else but a very intelligent, well-spoken person who was very easy to work with and [he was] just surprised that she's in these circumstances." That weighs against a finding of incompetence on this record. *See Lucas*, 323 N.W.2d at 232.

While Nyala's expressions of suicidal ideations are concerning, our review of the totality of the record shows Nyala "was lucid, oriented to time and place, demonstrated an understanding of the proceedings and the role of the persons present, demonstrated an ability to communicate with [her] lawyer, and demonstrated an appreciation of the charge against [her] and the consequences of pleading guilty." *See Newman*, 970 N.W.2d at 871. So, we

find Nyala failed to establish that she was not competent, and we affirm her convictions and sentences.

**AFFIRMED.**